**In re:  GABAPENTIN PATENT LITIGATION**

**No. MDL NO. 1384.**

**No. 00–2931(JCL), CIV.A.00–2931, CIV. A.00–3522, CIV.A.00–4168, CIV.A.00– 4589, CIV.A.00–6073, CIV.A.01–0193, CIV.A.01–0611, CIV.A.01–1537, CIV. A.01–2194, CIV.A.03–1545, CIV.A.03– 1824, CIV.A.03–4017, CIV.A.04–2859, CIV.A.04–4789.**

United States District Court,
D. New Jersey.

May 26, 2006.

John J. Francis, Jr., Drinker Biddle & Shanley LLP, Florham Park, NJ, for Pfizer Inc., Warner–Lambert Co., and Gödecke AG.

Edgar H. Haug, Steven M. Amundson, Frommer Lawrence & Haug LLP, New York City, Arnold B. Calmann, Saiber Schlesinger Satz & Goldstein, LLC, Newark, NJ, for Purepac Pharmaceutical Co. and Faulding, Inc.

William A. Rakoczy, Paul J. Molino, Rakoczy Molino Mazzochi & Siwik LLP, Chicago, IL, Joseph J. Fleischman, Norris, McLaughlin & Marcus, PA, Somerville, NJ, for Apotex Corp., Apotex, Inc., and TorPharm, Inc.

Thomas J. Meloro, Steven J. Lee, Ph.D., Kenyon & Kenyon, New York City, Allyn Z. Lite, Michael E. Patunas, Lite DePalma Greenberg & Rivas, LLC, Newark, NJ, for Teva Pharmaceuticals Industries, Ltd. and Teva Pharmaceuticals USA.

William L. Mentlik, Lerner David Littenberg Krumholz & Mentlik, Westfield, NJ, James E. Cecchi, Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein, P.C., Roseland, NJ, for Zenith Laboratories, Inc., Zenith Goldline Pharmaceuticals, Inc., and IVAX Corp.

Stanley H. Lieberstein, Richard J. Basile, St. Onge Steward Johnston & Reens LLC, Stamford, CT, Donald Horowitz, The Law Offices of Donald Horowitz, Hackensack, NJ, for Eon Labs Manufacturing, Inc.

## MEMORANDUM AND ORDER

LIFLAND, District Judge.

Plaintiffs Warner–Lambert Company, LLC ("Warner–Lambert"), Pfizer, Inc. ("Pfizer"), and Gödecke Aktiengesellschaft ("Gödecke") (collectively "Plaintiffs") move for reconsideration of the Court's December 22, 2005 Order granting First–Wave Defendants'[1] motion to bar the law firm of

---

1. First–Wave Defendants include Purepac Pharmaceutical Co. and Faulding Inc. (collectively "Purepac"), Teva Pharmaceuticals USA and Teva Pharmaceuticals Ltd. (collectively "Teva"), Zenith Laboratories, Inc., Zenith Goldline Pharmaceuticals, Inc., and IVAX Corporation (collectively "Ivax"), Eon Labs Manufacturing ("Eon"), and Apotex Corpora-

Kaye Scholer LLP ("Kaye Scholer") from appearing as attorneys for Plaintiffs. For the reasons stated below, Plaintiffs' motion for reconsideration will be denied.

## BACKGROUND

On or about October 6, 2005, First–Wave Defendants filed a motion to bar Kaye Scholer from entering this multidistrict patent infringement action (the "Gabapentin action") on behalf of Plaintiffs, based on the fact that two current Kaye Scholer attorneys, Scott G. Lindvall and Patricia J. Clarke, previously represented First–Wave Defendant Ivax Corporation ("Ivax") during their association with the firm Darby & Darby, and were active in implementation of a Joint Defense Agreement ("JDA").

This Court granted First–Wave Defendants' motion by Order of December 22, 2005, concluding that the JDA in place at the time of Mr. Lindvall's and Ms. Clarke's representation of Ivax created a fiduciary and implied attorney-client relationship between Mr. Lindvall and Ms. Clarke and the other First–Wave Defendants. As members of the joint defense team, Mr. Lindvall and Ms. Clarke received confidential information from co-First-Wave Defendants. The Gabapentin action is the same proceeding in which Mr. Lindvall and Ms. Clarke formerly had primary responsibility for the representation of Ivax. Therefore, their disqualification must be imputed to Kaye Scholer. *See* Rule of Professional Conduct ("RPC") 1.10.

Although the Court carefully considered all arguments raised by counsel in support of and in opposition to the original motion, the Memorandum and Order does not reflect its consideration of the right to choose one's counsel weighed against the appropriateness of disqualification under

these circumstances, and the need to maintain the public's confidence in the integrity of the legal profession. As these issues are components of disqualification analysis, it is pertinent to Plaintiffs' motion for reconsideration. *See Dewey v. R.J. Reynolds Tobacco Co.,* 109 N.J. 201, 222, 536 A.2d 243 (1988). However, the other arguments raised by Plaintiffs' motion for reconsideration fail to meet the standard for such review.

## STANDARD OF REVIEW

Relief by way of a motion for reconsideration or reargument is "an extraordinary remedy" that is to be granted "very sparingly." *NL Indus. Inc. v. Commercial Union Ins. Co.,* 935 F.Supp. 513, 516 (D.N.J.1996); *Maldonado v. Lucca,* 636 F.Supp. 621, 630 (D.N.J.1986). Local Rule 7.1(i) governing reconsideration does not contemplate a recapitulation of arguments considered by the court before rendering its decision. *Bermingham v. Sony Corp. of Am., Inc.,* 820 F.Supp. 834, 856 (D.N.J. 1992), *aff'd,* 37 F.3d 1485 (3d Cir.1994); *Carteret Sav. Bank, F.A. v. Shushan,* 721 F.Supp. 705, 709 (D.N.J.1989). Rather, the rule permits reconsideration only when "dispositive factual matters or controlling decisions of law" were presented to the court but were overlooked. *Resorts Int'l v. Greate Bay Hotel and Casino,* 830 F.Supp. 826, 831 (D.N.J.1992); *Khair v. Campbell Soup Co.,* 893 F.Supp. 316, 337 (D.N.J.1995).

Local Rule 7.1(i) requires the moving party to "set[ ] forth concisely the matters or controlling decisions which counsel believes the [court] has overlooked." A motion under Rule 7.1(i) may be granted if: (1) "an intervening change in the controlling law has occurred; (2) evidence not previously available has become available;

tion, Apotex Inc., and Torpharm Inc. (collec-     tively "Apotex").

or (3) it is necessary to correct a clear error of law or prevent manifest injustice." *Database Am., Inc. v. Bellsouth Adver. and Pub. Co.,* 825 F.Supp. 1216, 1220 (D.N.J.1993); *see also North River Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir.1995); *S.C. v. Deptford Township Bd. of Educ.,* 248 F.Supp.2d 368, 380–81 (D.N.J.2003).

### ANALYSIS

Plaintiffs argue that the Court overlooked its obligation to weigh its conclusion that disqualification was appropriate against the affected clients' right to counsel of their choice. *Dewey,* 109 N.J. at 222, 536 A.2d 243. Plaintiffs contend that First–Wave Defendants would suffer no prejudice if Kaye Scholer were to become counsel because there is no dispute as to the efficacy of the screen Kaye Scholer instituted to protect any violation of confidences by Mr. Lindvall and Ms. Clarke.

First–Wave Defendants respond that Kaye Scholer's appearance would be highly prejudicial to them and that a party's right to counsel of his own choosing must yield when that counsel is burdened with ethical conflicts. First–Wave Defendants argue additionally that Plaintiffs would likely suffer no prejudice by Kaye Scholer's disqualification, because Kaye Scholer has never represented them in the Gabapentin action and many firms are capable of handling their representation who do not have ethical conflicts.

■ Resolution of this issue requires a balancing of the hardship to the client whose lawyer is sought to be disqualified against the potential harm to the adversary should the attorney be permitted to proceed. In addition, the Court must consider its obligation to preserve high professional standards and the integrity of the proceedings. *Essex Chemical Corp. v.*

*Hartford Accident & Indem.,* 993 F.Supp. 241, 254 (D.N.J.1998).

■ In balancing the performance of fiduciary obligations and the implied attorney-client relationship against the right to choose counsel, the former prevails in this situation. Kaye Scholer has not acquired much knowledge about the Gabapentin action because it has not been active, Plaintiffs heretofore being represented by the Fitzpatrick Cella firm. Moreover, I agree with First–Wave Defendants that Plaintiffs have relationships with many other law firms eminently capable of representing Plaintiffs' interests herein. Accordingly, the right to choose counsel is outweighed by the conflict inherent in Kaye Scholer's representation.

Members of the legal profession today are highly mobile. Firm-switching is not uncommon. It seems to the Court, given that background, that the public's perception of the legal profession is enhanced by what the Court admits is an appropriate, albeit somewhat strict, application of the ethical rules in this side-switching context.

Finally, the other arguments raised by Plaintiffs in support of the motion for reconsideration do not identify any controlling legal or factual issues that were not previously considered by the Court in deciding the initial motion.

Accordingly, **IT IS** on this 26th day of May 2006,

**ORDERED** that Plaintiffs' motion for reconsideration is hereby denied.